**UNITED STATES DISTRICT COURT**          **EASTERN DISTRICT OF TEXAS**

DIANA L. EVANS,                            §
                                           §
              Plaintiff,                   §
                                           §
*versus*                                   §     CIVIL ACTION NO. 1:06-CV-166
                                           §
TEXAS DEPARTMENT OF                        §
TRANSPORTATION,                            §
                                           §
              Defendant.                   §

## MEMORANDUM AND ORDER

Pending before the court is Defendant Texas Department of Transportation's ("TxDOT")

Motion for Summary Judgment (#28).  Defendant seeks summary judgment on Plaintiff Diana L.

Evans's ("Evans") claims of retaliation and employment discrimination based on race, gender,

age, and disability, which she brings pursuant to Title VII of the Civil Rights Act of 1964, as

amended ("Title VII"), 42 U.S.C. §§ 2000e-2000e-17, the Age Discrimination in Employment

Act of 1967, as amended ("ADEA"), 29 U.S.C. §§ 621-634, and the Americans with Disabilities

Act of 1990, as amended ("ADA"), 42 U.S.C. §§ 12101-12213.  Having reviewed the pending

motion, the submissions of the parties, the pleadings, and the applicable law, the court is of the

opinion that summary judgment is warranted.

I.     Background

Plaintiff Evans was employed by the Beaumont District of Defendant TxDOT from March

1994 until June 18, 2004, when she was terminated for violating two policies listed in TxDOT's

Human Resources Manual.  At the time of her discharge, Evans was a fifty-seven-year-old white

female working as an office manager at the Beaumont District's area maintenance office in

Kountze, Texas.  Prior to working at the Kountze facility, Evans served as an office manager at TxDOT's Beaumont location.  Evans requested a hardship and medical transfer to the Kountze facility in March 2003, citing as justification her recent divorce from a co-worker employed at the Beaumont office, her involvement in a lawsuit, and her stress-related high blood pressure and heart problems.  Evans received a hardship transfer to the Kountze Maintenance Office in April 2003.

On or about October 27, 2003, while working at the Kountze facility, Evans lodged a hostile work environment complaint with her supervisor, Todd Dinger ("Dinger").  According to Evans's written complaint, fellow employee Cheryl McCray ("McCray") verbally attacked her in the presence of other co-workers, using abusive and profane language.  Evans also reported that McCray's behavior continued at a meeting involving Evans, McCray, Dinger, and Assistant Supervisor Michael Tywater, during which Evans was "subjected to intimidating and malicious stares" from McCray, who stated to Evans, "I'm not scared of you."  Dinger directed McCray to stop staring at Evans, and Evans asked that the meeting come to a close so that she could take her blood pressure medication.  Evans further asserted in her complaint that she was prepared to file a grievance against McCray if the hostile behavior continued; however, it does not appear that Evans ever did so.

In April 2004, at the request of District Engineer John A. Barton, P.E. ("Barton"), a team of employees from TxDOT's Audit Office in Austin performed a Management Directed Review ("MDR") of the Beaumont District to investigate allegations of misconduct made by a former employee.[1]  As District Engineer, Barton is responsible for managing all aspects of the Beaumont

---

[1] The allegations of misconduct did not relate to or involve Evans.

District, including hiring and terminating employees, and all district employees are under his general supervision.  Barton has been employed in this position since December 2003.

As part of the MDR, the audit team interviewed each of the sixteen employees working at the Kountze Maintenance Office as well as other district staff.  During interviews at the Kountze facility, it came to the attention of the audit team that an office manager, later identified as Evans, may have attempted to convince a co-worker to change the beneficiary of his TxDOT retirement benefits.  After conducting additional investigation, the audit team concluded that the allegation of misconduct was substantiated.  This information was provided to Barton in the audit team's written report, dated May 11, 2004.  As a result of the report, on June 1, 2004, Barton asked the district's Internal Review Analyst, LaVerne Danos ("Danos"), and Human Resources Officer, Cheryl Horn ("Horn"), to investigate the allegation further.

On June 7, 2004, Horn interviewed McCray, the Kountze employee who initially brought the allegation to the attention of the audit team.  According to Horn's affidavit, McCray revealed that she overheard Evans telling a fellow employee, Dearl Walters ("Walters"), that he needed to change the beneficiary of his retirement benefits from his niece to his sister.  McCray also stated that she heard Walters respond repeatedly that he did not wish to change his beneficiary.  Subsequent to the conversation between Evans and Walters, Walters asked McCray for the telephone number of Lori Morgan ("Morgan"), the Assistant Human Resources Officer, so that he could verify that his beneficiary had not been changed, purportedly because Evans told him that she was going to handle the paperwork.

McCray also reported to Horn that on another occasion she overheard Evans talking on the telephone with someone Evans referred to as "sister."  During that conversation, Evans allegedly

discussed Walters's personal business, including the fact that Walters's doctor and bank had called for him at the office.  McCray further asserted that she overheard Evans tell "sister" that Walters needed to change his beneficiary from his niece to his sister.

Horn interviewed Walters concerning the above allegations on June 7, 2004.  Walters confirmed that Evans told him that his niece "was not doing him right" and that he should change his beneficiary to his sister.  Walters responded that he was not interested in altering his designation.  Additionally, Walters reported that Evans pressed him to change his beneficiary on approximately three subsequent occasions, to which he again replied that he did not want to remove his niece as the beneficiary.  Although Walters did not see any paperwork suggesting that his beneficiary had been changed without his approval, he contacted Morgan in Human Resources, as well as Human Resources in Austin, for verification because he was concerned that Evans may have made the changes herself.

On June 8, 2004, Horn interviewed Evans regarding the complaints of Walters and McCray.  Evans denied revealing Walters's beneficiary information to a third party and telling Walters that she was ordering the paperwork to effect the change of his beneficiary.  Horn reported the information gathered during the interviews of McCray, Walters, and Evans to Barton on June 8, 2004.  On June 14, 2004, Barton formally responded to the MDR report, writing that he concurred with the audit team's finding that the allegations against Evans were substantiated.  Specifically, Barton stated that an Internal Review Analyst and Human Resources Officer were investigating the matter further and that he was working with other departments to determine the appropriate disciplinary action, if any, to impose on Evans.

In addition to the complaints raised about Evans during the MDR, on June 8, 2004, Barton was informed by the Beaumont District Area Engineer, Duane Browning ("Browning"), that Jimmie Poplin ("Poplin"), District Manager of one of TxDOT's contractors, N-Line, reported to Dinger that Evans had inappropriately contacted N-Line regarding the wages of one its flaggers. In particular, Browning noted that Evans identified herself as a TxDOT employee, failed to reveal that the N-Line flagger in question was her daughter, and failed to disclose that wage rates were not within her area of responsibility at TxDOT.   Barton asked Browning to follow up with Poplin directly, who confirmed the allegations on June 14, 2004.   Barton also asked Danos to discuss the complaint with N-Line's Human Resources Manager, Justin Ryan ("Ryan").   Danos reported to Barton on June 14, 2004, that Ryan verified the allegations about Evans and her daughter during a telephone conversation Danos had with Ryan concerning the incident.[2]   According to Ryan, Evans had contacted him several months previously and informed him that one of his flaggers was supposed to have received a raise from $7.00 per hour to $8.00 per hour.   Ryan responded that he was unaware of such a change and that he would contact Poplin about the correct rate.   He commented that Evans identified herself as a TxDOT employee but did not inform him that the inquiry concerned her daughter.

On June 18, 2004, Barton terminated Evans's employment with TxDOT, citing her mishandling of Walters's beneficiary information as well as her contact with N-Line regarding her daughter's wages.   With respect to her actions related to Walters, Evans's Disciplinary Action Documentation, which was signed by Barton, Dinger, and Browning, stated that Evans's conduct violated Chapter 8, Section 6, of the TxDOT Human Resources Manual addressing Miscellaneous

---

[2] Ryan also summarized his recollection of events in a letter to Danos dated June 22, 2004.

5

Prohibited Conduct.  In particular, the report stated that "Ms. Evans' position requires her to handle, process, maintain and protect sensitive and confidential information and her actions have violated the trust and accountability expected of her."  The report also noted that Evans previously signed an Information Resources Confidentiality Agreement on September 16, 2003, outlining her duty to preserve the confidentiality of information.

With respect to Evans's contact with N-Line, Evans purportedly violated Chapter 8, Section 6, of the Human Resources Manual by knowingly making a false representation while acting as a representative of TxDOT.  Moreover, Barton found that her actions violated Chapter 8, Section 9, which requires that employees "conduct themselves in a manner that reflects favorably on the department" and "avoid even the appearance of unprofessional behavior." Barton stated that Evans's conduct indicated "an intentional disregard for department policies on professional behavior because Ms. Evans used her position and information available in her position inappropriately."  Finally, Barton concluded that Evans's actions were "severely objectionable" and that immediate disciplinary action was warranted, despite her lack of a history of disciplinary problems.

Evans filed her Original Complaint against TxDOT on March 21, 2006, asserting claims of retaliation and employment discrimination pursuant to Title VII, the ADEA, and the ADA. Specifically, Evans contends that she was treated differently than similarly situated employees due to her race, gender, age, and disability and was retaliated against for filing a complaint of hostile work environment.  TxDOT denies that it engaged in any retaliatory or discriminatory behavior, arguing that it had a legitimate reason to terminate Evans's employment and that Barton had no knowledge of Evans's complaint of hostile work environment at the time of her discharge.

Defendant filed the instant motion on June 8, 2007, seeking summary judgment on all of Plaintiff's claims.  TxDOT contends that Evans's discrimination claims fail as a matter of law because she is not comparing herself to employees who are similarly situated.  Moreover, as to Plaintiff's claims under the ADA, TxDOT asserts that Evans has not shown that she was disabled at the time of her discharge or that Barton regarded her as being disabled.  In response, Evans maintains that she has provided sufficient evidence of similarly situated employees at TxDOT who received more lenient treatment for behavior arguably more serious than that engaged in by Evans. She also contends that she has satisfied her burden of establishing a *prima facie* case of discriminatory discharge under Title VII, the ADEA, and the ADA.

With regard to Evans's retaliation claim, TxDOT argues that there is no causal connection between Evans's discharge and her participation in a protected activity because Barton was unaware of her hostile work environment complaint at the time he terminated Evans.  TxDOT further contends that it has provided legitimate reasons for firing Evans.  Evans responds that Barton's lack of knowledge of the complaint of hostile work environment is irrelevant because he served as the "cat's paw" of McCray, who was acting with a retaliatory motive.  Evans argues, therefore, that the causal link between her protected activity and her termination remains intact.

II.   Analysis

A.   Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  The

party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Warfield v. Byron*, 436 F.3d 551, 557 (5th Cir. 2006); *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Martinez v. Schlumberger, Ltd.*, 338 F.3d 407, 411 (5th Cir. 2003); *Terrebonne Parish Sch. Bd. v. Mobil Oil Corp.*, 310 F.3d 870, 877 (5th Cir. 2002).

"A fact is '*material*' if it '*might affect* the outcome of the suit under governing law.'" *Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001) (emphasis in original) (quoting *Anderson*, 477 U.S. at 248); *accord Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446, 454 (5th Cir. 2005); *Harken Exploration Co. v. Sphere Drake Ins. PLC*, 261 F.3d 466, 471 (5th Cir. 2001); *Merritt-Campbell, Inc. v. RxP Prods., Inc.*, 164 F.3d 957, 961 (5th Cir. 1999); *Burgos v. Southwestern Bell Tel. Co.*, 20 F.3d 633, 635 (5th Cir. 1994).  "Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.  "An issue is '*genuine*' if it is real and substantial, as opposed to merely formal, pretended, or a sham." *Bazan*, 246 F.3d at 489 (emphasis in original).  Thus, a genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *accord EMCASCO Ins. Co. v. American Int'l Specialty Lines Ins. Co.*, 438 F.3d 519, 523 (5th Cir. 2006); *Cooper Tire & Rubber Co.*, 423 F.3d at 454; *Harken Exploration Co.*, 261 F.3d at 471; *Merritt-Campbell, Inc.*, 164 F.3d at 961.  The moving party, however, need not negate the elements of the nonmovant's case.  *See Boudreaux v. Swift Transp.*

8

*Co.*, 402 F.3d 536, 540 (5th Cir. 2005); *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).

Once a proper motion has been made, the nonmoving party may not rest upon mere allegations or denials in the pleadings but must present affirmative evidence, setting forth specific facts, to show the existence of a genuine issue for trial.  *Celotex Corp.*, 477 U.S. at 322 n.3 (quoting FED. R. CIV. P. 56(e)); *Anderson*, 477 U.S. at 256; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.11 (1986); *EMCASCO Ins. Co.*, 438 F.3d at 523; *Smith ex rel. Estate of Smith v. United States*, 391 F.3d 621, 625 (5th Cir. 2004); *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003); *Rushing v. Kansas City S. Ry. Co.*, 185 F.3d 496, 505 (5th Cir. 1999), *cert. denied*, 528 U.S. 1160 (2000).  "[T]he court must review the record 'taken as a whole.'"  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (quoting *Matsushita Elec. Indus. Co.*, 475 U.S. at 587); *see Riverwood Int'l Corp. v. Employers Ins. of Wausau*, 420 F.3d 378, 382 (5th Cir. 2005).

All the evidence must be construed "in the light most favorable to the non-moving party without weighing the evidence, assessing its probative value, or resolving any factual disputes." *Williams v. Time Warner Operation, Inc.*, 98 F.3d 179, 181 (5th Cir. 1996); *see Reeves*, 530 U.S. at 150; *Lincoln Gen. Ins. Co.*, 401 F.3d at 350; *Smith*, 391 F.3d at 624; *Malacara*, 353 F.3d at 398; *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003); *Harken Exploration Co.*, 261 F.3d at 471; *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir.), *cert. denied*, 534 U.S. 951 (2001).  The evidence of the nonmovant is to be believed, with all justifiable inferences drawn and all reasonable doubts resolved in her favor.  *Palmer v. BRG of Ga., Inc.*, 498 U.S. 46, 49 n.5 (1990) (citing *Anderson*, 477 U.S. at 255); *Shields v. Twiss*, 389 F.3d 142, 150 (5th Cir. 2004);

*Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003); *Martinez*, 338 F.3d at 411; *Gowesky v. Singing River Hosp. Sys.*, 321 F.3d 503, 507 (5th Cir.), *cert. denied*, 540 U.S. 815 (2003); *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002).   The evidence is construed "in favor of the nonmoving party, however, only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999); *accord Boudreaux*, 402 F.3d at 540; *Little*, 37 F.3d at 1075.

Furthermore, "'only *reasonable* inferences can be drawn from the evidence in favor of the nonmoving party.'" *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 469 n.14 (1992) (emphasis in original) (quoting *H.L. Hayden Co. of N.Y., Inc. v. Siemens Med. Sys., Inc.*, 879 F.2d 1005, 1012 (2d Cir. 1989)).   "If the [nonmoving party's] theory is . . . senseless, no reasonable jury could find in its favor, and summary judgment should be granted." *Id.* at 468-69. The nonmovant's burden is not satisfied by "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,'" by speculation, by the mere existence of some alleged factual dispute, or "by only a 'scintilla' of evidence." *Little*, 37 F.3d at 1075 (quoting *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *Matsushita Elec. Indus. Co.*, 475 U.S. at 586; *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994); *Davis v. Chevron U.S.A., Inc.,* 14 F.3d 1082, 1086 (5th Cir. 1994)); *accord Warfield*, 436 F.3d at 557; *Boudreaux*, 402 F.3d at 540; *Wallace*, 80 F.3d at 1047.   "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown*, 337 F.3d at 541; *accord Hugh Symons Group, plc v. Motorola, Inc.*,  292 F.3d 466, 468 (5th Cir.),

*cert. denied*, 537 U.S. 950 (2002); *see Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 332 (5th Cir. 2004); *Bridgmon v. Array Sys. Corp.*, 325 F.3d 572, 577 (5th Cir. 2003).

Summary judgment is mandated if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to her case on which she bears the burden of proof at trial. *Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp.*, 477 U.S. at 322; *EMCASCO Ins. Co.*, 438 F.3d at 523; *Cutrera v. Board of Supervisors of La. State Univ.*, 429 F.3d 108, 110 (5th Cir. 2005); *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 322-23.

B.      Discrimination under Title VII, the ADEA, and the ADA

        1.      Statutory Provisions

Title VII provides that "[i]t shall be an unlawful employment practice for an employer—(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1); *accord Desert Palace, Inc. v. Costa*, 539 U.S. 90, 92-93 (2003); *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 346 (5th Cir. 2007); *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 651 (5th Cir. 2004); *see also Ledbetter v. Goodyear Tire & Rubber Co.*, ___ U.S. ___, ___, 127 S. Ct. 2162, 2166 (2007). "The purposes of Title VII are to achieve equality of employment opportunity and to make persons whole for injuries suffered on account of unlawful

11

employment discrimination." *Floca v. Homcare Health Servs., Inc.*, 845 F.2d 108, 111 (5th Cir. 1988) (citing *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 417 (1975)).

The ADEA similarly provides that "[i]t shall be unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1); *accord Reeves*, 530 U.S. at 141; *Berquist v. Washington Mut. Bank*, ___ F.3d ___, ___, No. 05-20956, 2007 WL 2460350, at *3 (5th Cir. Aug. 31, 2007); *Coleman v. New Orleans & Baton Rouge S.S. Pilots' Ass'n*, 437 F.3d 471, 478 (5th Cir.), *cert. denied*, 126 S. Ct. 2970 (2006); *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 308-09 (5th Cir. 2004).  In essence, the ADEA makes it unlawful for an employee, who is at least forty years old, to be discharged or otherwise subjected to an adverse employment action because of her age.  *Rutland v. Moore*, 54 F.3d 226, 228 (5th Cir. 1995) (citing 29 U.S.C. §§ 623(a), 631(a)).  "Congress expressly declared that the purposes of the ADEA were 'to promote employment of older persons based on their ability rather than age; to prohibit arbitrary age discrimination in employment; [and] to help employers and workers find ways of meeting problems arising from the impact of age on employment.'"  *Wamsley v. Champlin Ref. & Chems., Inc.*, 11 F.3d 534, 541 (5th Cir. 1993), *cert. denied*, 514 U.S. 1037 (1995) (quoting 29 U.S.C. § 621(b)).  "When a plaintiff alleges disparate treatment, 'liability depends on whether the protected trait (under the ADEA, age) actually motivated the employer's decision.'"  *Reeves*, 530 U.S. at 141 (quoting *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993)); *accord Rachid*, 376 F.3d at 309.  "That is, the plaintiff's age must have 'actually played a role in [the employer's decisionmaking] process and had a

12

determinative influence on the outcome.'" *Reeves*, 530 U.S. at 141 (quoting *Hazen Paper Co.*, 507 U.S. at 610).

Finally, "'"[t]he ADA is a federal antidiscrimination statute designed to remove barriers which prevent qualified individuals with disabilities from enjoying the same employment opportunities that are available to persons without disabilities."'" *Burch v. Coca-Cola Co.*, 119 F.3d 305, 313 (5th Cir. 1997), *cert. denied*, 522 U.S. 1084 (1998) (quoting *Taylor v. Principal Fin. Group, Inc.*, 95 F.3d 153, 161 (5th Cir. 1996) (quoting 29 C.F.R. pt. 1630 app.)); *accord Seaman v. CSPH, Inc.*, 179 F.3d 297, 300 (5th Cir. 1999); *see also* 42 U.S.C. §§ 12101-12213; *Mason v. United Air Lines, Inc.*, 274 F.3d 314, 316 (5th Cir. 2001).  Title I of the Act, which covers employment discrimination, provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a); *accord Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 560 n.7 (1999); *Rodriguez v. ConAgra Grocery Prods. Co.*, 436 F.3d 468, 474 (5th Cir. 2006); *Brennan v. Mercedes Benz USA*, 388 F.3d 133, 135 (5th Cir. 2004); *Dupre v. Charter Behavioral Health Sys. of Lafayette Inc.*, 242 F.3d 610, 613 n.2 (5th Cir. 2001); *see Cutrera*, 429 F.3d at 111 n.2.

"The ADA seeks to eliminate unwarranted discrimination against disabled individuals in order both to guarantee those individuals equal opportunity and to provide the Nation with the benefit of their consequently increased productivity."  *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 801 (1999) (citing 42 U.S.C. § 12101(a)(8)-(9)).  The ADA defines a "qualified individual with a disability" as "an individual with a disability who, with or without reasonable

accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8); *accord Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 193 (2002); *Albertson's, Inc.*, 527 U.S. at 578-79; *Rodriguez*, 436 F.3d at 474; *Mason*, 274 F.3d at 316; *Holtzclaw v. DSC Commc'ns Corp.*, 255 F.3d 254, 258 (5th Cir. 2001). "The ADA prohibits discrimination on the basis of disability 'to ensure that [such] individuals are not denied jobs or other benefits because of the prejudiced attitudes or the ignorance of others.'" *Deas v. River West, L.P.*, 152 F.3d 471, 482 (5th Cir. 1998), *cert. denied*, 527 U.S. 1044 (1999) (quoting *School Bd. of Nassau County v. Arline*, 480 U.S. 273, 284 (1987)).

2.   General Burden of Proof

Discrimination under Title VII, the ADEA, or the ADA can be established through either direct or circumstantial evidence. *See Desert Palace, Inc.*, 539 U.S. at 99; *Alvarado v. Texas Rangers*, 492 F.3d 605, 611 (5th Cir. 2007) (citing *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219 (5th Cir. 2001), *cert. denied*, 535 U.S. 1078 (2002)); *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007); *Turner*, 476 F.3d at 345; *Rodriguez*, 436 F.3d at 480; *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000). "'Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption.'" *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 384 n.3 (5th Cir. 2003) (quoting *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002), *cert. denied*, 539 U.S. 926 (2003) (citing *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1217 (5th Cir. 1995))); *accord Rachid*, 376 F.3d at 310 n.6. "Absent direct evidence of discriminatory intent, as is typically the case, proof via circumstantial evidence is assembled using the framework set forth in the seminal case of

14

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 . . . (1973)." *Russell*, 235 F.3d at 222; *see Reeves*, 530 U.S. at 142-43; *Nasti v. CIBA Specialty Chems. Corp.*, 492 F.3d 589, 593 (5th Cir. 2007); *Turner*, 476 F.3d at 346; *Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 405 (5th Cir.), *cert. denied*, 546 U.S. 1061 (2005); *Bryan v. McKinsey & Co.*, 375 F.3d 358, 360 (5th Cir. 2004); *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003); *West*, 330 F.3d at 384.

Where, as here, there is no direct evidence of discrimination, the plaintiff must initially establish a *prima facie* case by satisfying a multi-factor test from which a discriminatory motive may be inferred, thus creating a rebuttable presumption of intentional discrimination. *See Reeves*, 530 U.S. at 142-43; *Alvarado*, 492 F.3d at 611; *Turner*, 476 F.3d at 345; *Bryant v. Compass Group USA Inc.*, 413 F.3d 471, 475 n.3 (5th Cir. 2005), *cert. denied*, 546 U.S. 1090 (2006); *Laxton*, 333 F.3d at 578; *Russell*, 235 F.3d at 222. "'[T]o establish a *prima facie* case, a plaintiff need only make a very minimal showing.'" *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41 (5th Cir. 1996) (quoting *Thornbrough v. Columbus & Greenville R.R. Co.*, 760 F.2d 633, 639 (5th Cir. 1985)); *accord Bauer v. Albemarle Corp.*, 169 F.3d 962, 967 (5th Cir. 1999).

Once the plaintiff establishes a *prima facie* case, the burden then shifts to the defendant to articulate—but not prove—a legitimate, nondiscriminatory reason for its employment decision. *Raytheon Co. v. Hernandez*, 540 U.S. 44, 49 n.3 (2003); *Reeves*, 530 U.S. at 142; *McDonnell Douglas Corp.*, 411 U.S. at 802; *Alvarado*, 492 F.3d at 611; *Nasti*, 492 F.3d at 593; *Turner*, 476 F.3d at 345; *Willis v. Coca Cola Enters., Inc.*, 445 F.3d 413, 420 (5th Cir. 2006); *Baker v. American Airlines, Inc.*, 430 F.3d 750, 753 (5th Cir. 2005); *Laxton*, 333 F.3d at 578 (citing *Wallace*, 271 F.3d at 219); *Okoye v. University of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512 (5th Cir. 2001). "This burden is one of production, not persuasion; it 'can involve no

15

credibility assessment.'" *Reeves*, 530 U.S. at 142 (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993)); *accord Alvarado*, 492 F.3d at 611; *West*, 330 F.3d at 385; *Sandstad*, 309 F.3d at 898; *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000). "The [employer] must clearly set forth, through the introduction of admissible evidence, reasons for its actions which, '*if believed by the trier of fact*,' would support a finding that unlawful discrimination was not the cause of the employment action." *Bauer*, 169 F.3d at 966 (quoting *Hicks*, 509 U.S. at 507) (emphasis in original); *accord Brown v. Bunge Corp.*, 207 F.3d 776, 781 (5th Cir. 2000).

If the employer meets its burden, "'the *McDonnell Douglas* framework—with its presumptions and burdens'—disappear[s], . . . and the sole remaining issue [is] 'discrimination *vel non*.'" *Reeves*, 530 U.S. at 142-43 (quoting *Hicks*, 509 U.S. at 510; *United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 714 (1983)); *see Nasti*, 492 F.3d at 593; *Wheeler*, 415 F.3d at 405; *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 350 (5th Cir. 2005); *Laxton*, 333 F.3d at 578; *West*, 330 F.3d at 385. "Although intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Reeves*, 530 U.S. at 143 (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)); *accord Hicks*, 509 U.S. at 507; *Nasti*, 492 F.3d at 593; *Baker*, 430 F.3d at 753-54; *Wheeler*, 415 F.3d at 405; *Laxton*, 333 F.3d at 578; *Vadie v. Mississippi State Univ.*, 218 F.3d 365, 372 (5th Cir. 2000), *cert. denied*, 531 U.S. 1150 (2001).

In attempting to satisfy this burden, under the modified *McDonnell Douglas* approach, the plaintiff must "offer sufficient evidence to create a genuine issue of material fact '"either (1) that

16

the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic (mixed-motive[s] alternative)."'" *Rachid*, 376 F.3d at 312 (quoting *Rishel v. Nationwide Mut. Ins. Co.*, 297 F. Supp. 2d 854, 865 (M.D.N.C. 2003) (quoting *Dunbar v. Pepsi-Cola Gen. Bottlers of Iowa, Inc.*, 285 F. Supp. 2d 1180, 1198 (N.D. Iowa 2003))); *accord Berquist*, 2007 WL 2460350, at *11; *Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 341 (5th Cir. 2005); *Machinchick*, 398 F.3d at 352.

Under the pretext alternative approach, the "plaintiff may establish pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.'" *Laxton*, 333 F.3d at 578 (citing *Reeves*, 530 U.S. at 143; *Wallace*, 271 F.3d at 220). "An explanation is false or unworthy of credence if it is not the real reason for the adverse employment action." *Id.* (citing *Sandstad*, 309 F.3d at 899). "[I]t is *permissible* for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation." *Reeves*, 530 U.S. at 147 (emphasis in original); *accord Bryant*, 413 F.3d at 476; *Kanida v. Gulf Coast Med. Pers. LP*, 363 F.3d 568, 574 (5th Cir. 2004); *West*, 330 F.3d at 385; *Ratliff v. City of Gainesville*, 256 F.3d 355, 360 (5th Cir. 2001).

"Evidence demonstrating that the employer's explanation is false or unworthy of credence, taken together with the plaintiff's prima facie case, is likely to support an inference of discrimination even without further evidence of defendant's true motive." *Laxton*, 333 F.3d at 578 (citing *Sandstad*, 309 F.3d at 897); *accord Machinchick*, 398 F.3d at 351; *Russell*, 235 F.3d at 223 (citing *Reeves*, 530 U.S. at 147-48). "'[O]nce the employer's justification has been

17

eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision.'" *Id.* (quoting *Reeves*, 530 U.S. at 147); *accord Laxton*, 333 F.3d at 578; *West*, 330 F.3d at 385.  Hence, the plaintiff need not, as a matter of course, introduce additional, independent evidence of discrimination to avoid summary judgment.  *See Reeves*, 530 U.S. at 148; *Ratliff*, 256 F.3d at 361-62; *Blow v. City of San Antonio*, 236 F.3d 293, 298 (5th Cir. 2001); *Russell*, 235 F.3d at 223. Ultimately, "[w]hether summary judgment is appropriate depends on numerous factors, including 'the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case'" that properly may be considered by the court when ruling on a motion for summary judgment.  *Price v. Federal Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002) (quoting *Reeves*, 530 U.S. at 148-49); *accord Machinchick*, 398 F.3d at 351 n.14; *Laxton*, 333 F.3d at 579; *Wallace*, 271 F.3d at 220; *Crawford*, 234 F.3d at 902.

### 3.    Discrimination under Title VII

Evans contends that her termination from TxDOT was motivated by racial and sexual discrimination.  To establish a *prima facie* case of discriminatory discharge under Title VII, a plaintiff may show that:

(1)    she is a member of a protected class;

(2)    she was qualified for the position;

(3)    she was discharged; and

(4)    she was replaced by someone outside the protected class.

18

*See McCoy*, 492 F.3d at 556; *Turner*, 476 F.3d at 345; *Wheeler*, 415 F.3d at 405; *Bryan*, 375 F.3d at 360; *Frank v. Xerox Corp.*, 347 F.3d 130, 137 (5th Cir. 2003); *Price*, 283 F.3d at 720; *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 426 (5th Cir. 2000).  Evans can establish the first element because she is a Caucasian female, the second element because she is qualified to serve as office manager, and the third element because her employment with TxDOT was terminated.  She fails to satisfy the fourth element, however, because Anita Doyle ("Doyle"), her replacement, is also a Caucasian female.  Thus, Evans was not replaced by someone outside her protected classes.

Nevertheless, "it is well settled that, although replacement with a non-member of the protected class is evidence of discriminatory intent, it is not essential to the establishment of a *prima facie* case under Title VII."  *Williams v. Trader Publ'g Co.*, 218 F.3d 481, 485 (5th Cir. 2000) (citing *Hornsby v. Conoco, Inc.*, 777 F.2d 243, 246-47 (5th Cir. 1985)); *see Byers*, 209 F.3d at 426-27; *Nieto v. L&H Packing Co.*, 108 F.3d 621, 624 n.7 (5th Cir. 1997).  Thus, in the alternative, Plaintiff may establish a *prima facie* case by demonstrating that she is a member of a protected class, she was qualified for the position, and similarly situated persons outside the class were treated more favorably than she.  *See Alvarado*, 492 F.3d at 611; *Willis*, 445 F.3d at 420; *Wheeler*, 415 F.3d at 405; *Keelan*, 407 F.3d at 339; *Septimus v. University of Houston*, 399 F.3d 601, 609 (5th Cir. 2005); *Bryan*, 375 F.3d at 360; *Laxton*, 333 F.3d at 579 n.1; *Okoye*, 245 F.3d at 512-13.

To establish a *prima facie* case in this manner, Plaintiff must show that employees not of her protected class received preferential treatment under circumstances nearly identical to hers. *See Culwell v. City of Fort Worth*, 468 F.3d 868, 873 (5th Cir. 2006); *Bryant*, 413 F.3d at 478

(citing *Okoye*, 245 F.3d at 514); *Keelan*, 407 F.3d at 345; *Wallace*, 271 F.3d at 221; *Wyvill v. United Cos. Life Ins. Co.*, 212 F.3d 296, 304 (5th Cir. 2000), *cert. denied*, 531 U.S. 1145 (2001); *see also Perez v. Texas Dep't of Crim. Justice*, 395 F.3d 206, 210 (5th Cir. 2004), *cert. denied*, 546 U.S. 976 (2005) (emphasizing that assessment of similarity of employees must be viewed from employer's perspective).   In other words, to prevail on her claims of racial or sexual discrimination, Evans must show that a non-Caucasian employee and/or a male employee, who engaged in comparable conduct under similar circumstances, was not terminated. *See Wheeler*, 415 F.3d at 406; *Wallace*, 271 F.3d at 220-22.

Plaintiff names several employees at TxDOT whom she argues received preferential treatment under circumstances nearly identical to hers.   Specifically, with respect to her claim of racial discrimination, she identifies McCray, an African-American female.   As to her claim of sexual discrimination, she points to four male employees:  Dinger, Walters, Poplin, and Alfred Brown ("Brown").

At the outset, none of the employees Evans identifies have the same job title or duties as she, an Office Technician IV, or office manager.   According to the official job description provided by TxDOT, an Office Technician IV "[p]erforms skilled clerical and/or administrative office support-related activities and/or advanced complex data quality control work."  Such work "usually involves some confidential and sensitive correspondence and communications," which requires that the employee "[p]rotect[] sensitive and confidential information."

In contrast, Dinger was Evans's supervisor at the Kountze facility, with the job title of Maintenance Section Supervisor II.  This position involves overseeing the maintenance section, supervising technical and clerical employees, and "providing a safe driving thoroughfare within

a geographic area of the state through the maintenance of all roads, structures, and rights-of-way." Poplin was also a Maintenance Section Supervisor.  Although the parties did not provide information as to his specific rank or duties, the court assumes that his responsibilities were similar to those of Dinger.

Walters and Brown were Transportation Maintenance Technicians, with Walters classified at Level IV and Brown at Level III.  Transportation Maintenance Technicians perform "highly skilled transportation maintenance work" and operate various types of complex heavy equipment and other maintenance tools.  Finally, McCray held the position of Maintenance Inspector IV, a job that involves inspecting "complex district maintenance and/or construction-related contracts, building maintenance contracts and set-a-side agreements."

As the above descriptions illustrate, Evans's position at TxDOT was vastly different from each of the individuals she asserts were given preferential treatment under nearly identical circumstances.  Because Evans and the TxDOT employees she identifies did not have the same job titles or duties, or, in some cases, the same supervisor, their circumstances were not nearly identical to Evans's.  *See Tucker v. SAS Inst., Inc.*, 462 F. Supp. 2d 715, 726 (N.D. Tex. 2006) (citing *Okoye*, 245 F.3d at 514); *Coleman v. Exxon Chem. Corp.*, 162 F. Supp. 2d 593, 608 (S.D. Tex. 2001) ("Employees with different responsibilities, different supervisors, different capabilities, different work rule violations or different disciplinary records are not considered to be 'nearly identical.'").

More importantly, however, the misconduct for which Evans was discharged was not nearly identical to that engaged in by the purported comparators.  *See Okoye*, 245 F.3d at 514 (citing *Little v. Republic Ref. Co.*, 924 F.2d 93, 97 (5th Cir. 1991); *Smith v. Wal-Mart Stores (No.*

*471)*, 891 F.2d 1177, 1180 (5th Cir. 1990)).  As evidence of disparate treatment, Evans submits

Disciplinary Action Documentation for infractions committed by Walters, Brown, and Poplin.

These reports do not bolster Evans's claim, however, because they show violations of policies

different from those breached by Evans.  *See Smith*, 891 F.2d at 1180 (finding that employees who

engage in different violations of company policy are not similarly situated); *Sagaral v. Wal-Mart

Stores Tex. LP*, No. H-05-3599, 2007 WL 1144462, at *14 (S.D. Tex. Apr. 17, 2007);

*Tabatchnik v. Continental Airlines*, No. H-06-1095, 2006 WL 3499524, at *5 (S.D. Tex. Dec.

5, 2006) (stating that courts generally hold that employees who have violated different rules are

not considered nearly identical); *see also Okoye*, 245 F.3d at 514.

For example, Brown was demoted and placed on probation for a period of twelve months

after an investigation revealed that he and another employee profited personally from selling

wreckage and debris removed from a roadway.  In doing so, Brown violated TxDOT's policy of

avoiding conflicts of interest.  With respect to Walters's misconduct, he received a written

reprimand for leaving a hunting rifle behind the seat of his truck in violation of Defendant's policy

prohibiting firearms on state property.  Additionally, Walters was placed on probation for twelve

months after using a racial slur in the presence of another co-worker, a violation of TxDOT's

policy against behavior that degrades another's race.  Finally, Poplin received a written

reprimand, six-months of probation, and an involuntary demotion because he permitted an

employee to sign timesheets showing eight hours of working time when she had not, in fact,

worked a full eight-hour day.  Although some of these infractions are arguably more egregious

than those committed by Evans, they nevertheless implicate different TxDOT policies, which is

insufficient to support a finding of nearly identical circumstances.[3]  *See Okoye*, 245 F.3d at 514; *Smith*, 891 F.2d at 1180; *Tabatchnik*, 2006 WL 3499524, at *5.

Plaintiff's assertions that Dinger and McCray were similarly situated to her are equally unavailing.  Evans maintains that both Dinger and McCray engaged in unauthorized discussions regarding Walters's beneficiary information and were not disciplined for doing so.  In support of this contention, Evans submits the deposition testimony of Dinger and McCray, which she maintains confirms that they engaged in behavior akin to the conduct that formed the basis of her discharge.  Plaintiff's argument is without merit.

First, there is no evidence in the record before the court that Evans, or any other TxDOT employee, brought these alleged policy violations to the attention of Barton.  As a result, Evans has failed to demonstrate that either employee, in fact, received preferential treatment.  Furthermore, Evans has not shown that Dinger or McCray violated TxDOT's policies.  Dinger admitted at deposition that Walters's niece, Tracy Thompson ("Thompson"), contacted him via telephone on two or three occasions because Walters was concerned that his beneficiary had been changed without his permission.  The extent of these conversations is unknown, and there is no evidence that any confidential information was improperly revealed to Thompson.  Additionally, Dinger's supervisory role may have authorized actions not allowed of an employee in Evans's position and, in the event that misconduct was discovered, would likely account for any disparate

---

[3] Moreover, the court notes that the incident involving Poplin, a supervisor, occurred two years prior to Evans's termination, and his punishment was determined by Walter Crook ("Crook"), the District Engineer before Barton.  Such disparities clearly undercut Evans's argument that Poplin's circumstances were nearly identical to hers.  *See, e.g.*, *Little*, 924 F.2d at 97 (finding that circumstances were not nearly identical when employees' actions were reviewed by different supervisors); *Coleman*, 162 F. Supp. 2d at 608.

treatment between Evans and Dinger.  Thus, the court rejects Evans's argument that Dinger is similarly situated to her.

Evans further argues that McCray violated confidentiality policies by discussing Walters's beneficiary information with third parties.  At deposition, McCray admitted to speaking with Thompson over the telephone when she called to talk to Dinger; however, McCray denied discussing Walters's personal business, stating that Thompson merely told her that she was upset that Evans was interfering in Walters's affairs.  Evans has offered no evidence that McCray revealed confidential information to Thompson during these brief interactions.

McCray also admitted at deposition that she reiterated to Evans that Walters was not interested in changing the beneficiary of his retirement benefits.  Even assuming that McCray's comment was a violation of TxDOT policy, her circumstances were not nearly identical to Evans's in any event.  For example, McCray's job responsibilities as a maintenance inspector did not include the routine handling of confidential information—a factor that impacted TxDOT's decision to terminate Evans.[4]  Moreover, Evans's conduct was arguably more reprehensible than McCray's comment, as TxDOT found that Evans pressured Walters to change his beneficiary on multiple occasions, despite Walters's clear disinterest in doing so, and that she disclosed confidential information to Walters's sister.  Finally, Evans's termination was not based solely on her behavior with respect to Walters but on a combination of infractions within a short period of time.  Therefore, the court finds that Evans's argument that McCray's circumstances were nearly identical to hers is unfounded.

---

[4] As stated in Evans's Disciplinary Action Documentation, Evans's position required her to "handle, process, maintain and protect sensitive and confidential information," and her actions "violated the trust and accountability expected of her."

In sum, Evans has failed to identify a single, similarly situated employee outside her protected class who was treated more favorably than she.  The employees named by Evans had different job titles, responsibilities, and, in the cases of Dinger and Poplin, supervisors than Evans.  *See Okoye*, 245 F.3d at 514; *Coleman*, 162 F. Supp. 2d at 608.  Furthermore, the misconduct for which Evans was discharged was not nearly identical to that allegedly engaged in by the comparators.  *See Okoye*, 245 F.3d at 514 (citing *Little*, 924 F.2d at 97).  Accordingly, Plaintiff is unable to establish a *prima facie* case of racial or sexual discrimination under Title VII, and summary judgment with respect to those claims is warranted.

### 4.     Discrimination under the ADEA

Evans further maintains that her termination from TxDOT was motivated by age discrimination in violation of the ADEA.  To establish a *prima facie* case of discriminatory discharge under the ADEA, the plaintiff must show that:

(1)     she is a member of the protected class—age forty or older;

(2)     she was qualified for the position she held;

(3)     she was discharged; and

(4)     she was replaced by someone outside the protected class; she was replaced by someone younger; or she was otherwise discharged because of her age.

*See Reeves*, 530 U.S. at 142; *Berquist*, 2007 WL 2460350, at *3; *Machinchick*, 398 F.3d at 350; *Rachid*, 376 F.3d at 309; *Palasota v. Haggar Clothing Co.*, 342 F.3d 569, 576 (5th Cir. 2003), *cert. denied*, 540 U.S. 1184 (2004); *West*, 330 F.3d at 384; *Russell*, 235 F.3d at 223-24.  Here, TxDOT does not dispute that Evans has established a *prima facie* case under the ADEA.  Evans, at age fifty-seven, is a member of the protected class; she was qualified for the position she held;

25

she was discharged from that position; and she was replaced by someone younger, namely, Doyle, a woman in her late thirties.[5]  *See Reeves*, 530 U.S. at 142.

Because Evans has established a *prima facie* case of age discrimination, to avoid liability, TxDOT must set forth an adequate, nondiscriminatory reason for its actions.  Once a plaintiff establishes a *prima facie* case of discrimination, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action.  *See id.*; *Hicks*, 509 U.S. at 506-07; *Alvarado*, 492 F.3d at 611; *Turner*, 476 F.3d at 345; *Bryant*, 413 F.3d at 475 n.3; *Laxton*, 333 F.3d at 578; *West*, 330 F.3d at 384; *Sandstad*, 309 F.3d at 897.  "The purpose of this step is 'to force the defendant to give an explanation for its conduct, in order to prevent employers from simply remaining silent while the plaintiff founders on the difficulty of proving discriminatory intent.'"  *Stratton v. Department for the Aging for the City of N.Y.*, 132 F.3d 869, 879 (2d Cir. 1997) (quoting *Fisher v. Vassar Coll.*, 114 F.3d 1332, 1335 (2d Cir. 1997), *cert. denied*, 522 U.S. 1075 (1998)).  "The employer need not persuade the court that it was motivated by the reason it provides; rather, it must simply articulate an explanation that, if true, would connote lawful behavior."  *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 52 (2d Cir. 1998) (emphasis omitted); *accord Nasti*, 492 F.3d at 593 (citing *Burdine*, 450 U.S. at 254); *Patrick*, 394 F.3d at 315; *Williams*, 98 F.3d at 181; *Acevedo-Diaz v. Aponte*, 1 F.3d 62, 67 (1st Cir. 1993).  Hence, the defendant's burden is relatively light.  *See Greenway*, 143 F.3d at 52.

---

[5] Neither party submitted evidence of Doyle's exact age.  At deposition, however, Dinger estimated that Doyle is currently in her late thirties to early forties, which would likely place her age between thirty-five and thirty-nine at the time she replaced Evans.  In any event, the parties do not dispute that Doyle is significantly younger than Evans.

"If the employer produces any evidence 'which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action,' then the employer has satisfied its burden of production." *Daigle v. Liberty Life Ins. Co.*, 70 F.3d 394, 396 (5th Cir. 1995) (quoting *Hicks*, 509 U.S. at 509); *accord Price*, 283 F.3d at 720.   "The employer's stated legitimate reason must be reasonably articulated and nondiscriminatory, but does not have to be a reason that the judge or jurors would act on or approve." *Loeb v. Textron, Inc.*, 600 F.2d 1003, 1012 n.6 (1st Cir. 1979); *accord Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1187 (11th Cir. 1984).   Indeed, even an employer's "'incorrect belief that an employee's performance is inadequate constitutes a legitimate, nondiscriminatory reason.'" *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995) (quoting *Little*, 924 F.2d at 97).   The articulated reason, however, must be both "'clear and reasonably specific.'"   *Okoye*, 245 F.3d at 513 (quoting *Burdine*, 450 U.S. at 258); *see Gallo v. Prudential Residential Servs. Ltd. P'ship*, 22 F.3d 1219, 1226 (2d Cir. 1994).   Furthermore, it "'must be legally sufficient to justify a judgment for the [employer].'"   *Hodgens v. General Dynamics Corp.*, 144 F.3d 151, 161 (1st Cir. 1998) (quoting *Burdine*, 450 U.S. at 255); *accord Patrick*, 394 F.3d at 319 n.34.   If the defendant sustains its burden of production, "the presumption raised by the plaintiff's prima facie case essentially disappears, and the plaintiff is left with the ultimate burden which has never left him:  that of proving that the defendant intentionally discriminated against him." *Tanik v. Southern Methodist Univ.*, 116 F.3d 775, 776 (5th Cir.), *cert. denied*, 522 U.S. 1015 (1997); *accord Reeves*, 530 U.S. at 143; *Nasti*, 492 F.3d at 593; *Wheeler*, 415 F.3d at 405; *Laxton*, 333 F.3d at 578; *Sandstad*, 309 F.3d at 897.

A review of the summary judgment record in this case reveals that TxDOT has adduced ample evidence of a non-discriminatory reason for Evans's discharge. Specifically, as detailed above, TxDOT terminated Evans for mishandling Walters's beneficiary information and contacting N-Line regarding her daughter's wages. Evans's conduct purportedly violated TxDOT's policies by failing to maintain and protect confidential information, knowingly making a false representation while acting as a representative of TxDOT, failing to conduct herself in a manner that reflects favorably on the department, and failing to avoid the appearance of unprofessional behavior. Such reasons, if believed, would permit the trier of fact to conclude that Evans's termination was non-discriminatory. *See Bauer*, 169 F.3d at 966 (quoting *Hicks*, 509 U.S. at 507). Hence, TxDOT has satisfied its burden of production.

Because TxDOT has carried its burden of articulating a legitimate, nondiscriminatory reason for its actions, to prevail, Evans "'must provide some evidence, direct or circumstantial, to rebut each of the employer's proffered reasons and allow the jury to infer that the employer's explanation was a pretext for discrimination.'" *Rutherford v. Harris County*, 197 F.3d 173, 184 (5th Cir. 1999) (quoting *Scott v. University of Miss.*, 148 F.3d 493, 504 (5th Cir. 1998)); *see Reeves*, 530 U.S. at 143; *Hicks*, 509 U.S. at 507-08; *McDonnell Douglas Corp.*, 411 U.S. at 804; *Laxton*, 333 F.3d at 578; *West*, 330 F.3d at 385; *Sandstad*, 309 F.3d at 897. Ultimately, "a reason cannot be proved to be 'a pretext *for discrimination*' unless it is shown *both* that the reason was false, *and* that discrimination was the real reason" for the employer's decision. *Hicks*, 509 U.S. at 515 (emphasis in original).

While the presumption of discrimination is no longer operative once the employer meets its burden of production, "the evidence establishing the plaintiff's prima facie case 'and inferences

properly drawn therefrom'" may still be considered "'on the issue of whether the defendant's explanation is pretextual.'"  *Reeves*, 530 U.S. at 143 (quoting *Burdine*, 450 U.S. at 255 n.10); *accord Laxton*, 333 F.3d at 582.  Nevertheless, "discrimination suits still require evidence of discrimination."  *Rubinstein v. Administrators of the Tulane Educ. Fund*, 218 F.3d 392, 400 (5th Cir. 2000), *cert. denied*, 532 U.S. 937 (2001); *accord Ratliff*, 256 F.3d at 360-61.  If, however, "the evidence of pretext is substantial, the plaintiff may create a genuine issue of material fact without independent evidence that discrimination was the real reason for the adverse employment action."  *Crawford*, 234 F.3d at 903 (citing *Walton v. Bisco Indus., Inc.*, 119 F.3d 368, 372 (5th Cir. 1997)); *see Reeves*, 530 U.S. at 143; *Laxton*, 333 F.3d at 585.

"[T]he plaintiff must substantiate his claim of pretext through evidence demonstrating that discrimination lay at the heart of the employer's decision."  *Price*, 283 F.3d at 720; *accord Rubinstein*, 218 F.3d at 400; *Guidry v. Pellerin Life Ins. Co.*, 364 F. Supp. 2d 592, 599 (W.D. La. 2005).  Hence, the plaintiff's assertion of pretext must be supported by more than mere self-serving, subjective, or speculative allegations; a plaintiff must provide sufficiently specific, substantive reasons for her claim of pretext.  *See Nichols*, 81 F.3d at 42; *Molnar v. Ebasco Constructors, Inc.*, 986 F.2d 115, 119 (5th Cir. 1993).  If the evidence presented is "not so persuasive so as to support an inference that the real reason was discrimination," then the plaintiff has failed to meet her burden.  *Rubinstein*, 218 F.3d at 400.  "Certainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory."  *Reeves*, 530 U.S. at 148; *accord West*, 330 F.3d at 385; *Price*, 283 F.3d at 720; *Okoye*, 245 F.3d at 514.

29

In the instant case, Evans first contends that TxDOT's stated reasons for discharging her were a pretext for age discrimination because they were false.  With respect to Evans's alleged behavior concerning Walters, she argues that the identity of Walters's beneficiary was not confidential and was not information she learned in the performance of her duties.  She further denies revealing any confidential information to Walters's sister or other third parties.  As to her alleged contact with N-Line about her daughter's wages, Evans asserts that she did not speak with N-Line about the wage discrepancy but rather handed the telephone to her daughter so that she could speak with Ryan about the problem.  Evans submits the affidavit of her daughter, DeeDee Harper, to support this version of events.

"When an employee is discharged based on complaints lodged by other employees, the validity of the initial complaint is not the central issue, because the ultimate falseness of the complaint proves nothing as to the employer, but only as to the complaining employee."  *Gallow v. Autozone, Inc.*, 952 F. Supp. 441, 446 (S.D. Tex. 1996) (citing *Waggoner v. City of Garland*, 987 F.2d 1160, 1165 (5th Cir. 1993)).  Thus, "[t]he real issue is whether the employer reasonably believed the employee's allegation and acted on it in good faith or, to the contrary, whether the employer did not believe the co-employee's allegation but instead used it as a pretext for an otherwise discriminatory dismissal."  *Id.* (citing *Waggoner*, 987 F.2d at 1165).  The inaccuracy of the reports, absent evidence that management was somehow complicit, is not indicative of discrimination or pretext.  *See Bryant*, 413 F.3d at 477-78.  "The burden is on the plaintiff to demonstrate that the employer did not believe in good faith an employee complaint but relied on it as a pretext for discrimination."  *Gallow*, 952 F. Supp. at 446 (citing *Waggoner*, 987 F.2d at 1166); *see also Jones v. Flagship Int'l*, 793 F.2d 714, 729 (5th Cir. 1986), *cert. denied*, 479 U.S.

1065 (1987); *De Anda v. St. Joseph Hosp.*, 671 F.2d 850, 854 n.6 (5th Cir. 1982); *Dickerson v. Metropolitan Dade County*, 659 F.2d 574, 581 (5th Cir. 1981).

Here, there is substantial evidence in the record that Barton investigated and verified the complaints voiced by McCray and Browning and relied on them in good faith.  With respect to Evans's behavior toward Walters, the audit team reported to Barton that the charges were substantiated based on its initial review and investigation of the complaint.  Subsequently, at Barton's request, Horn interviewed Walters, who corroborated the allegations of McCray.  As to Evans's contact with N-Line, Browning confirmed the allegations of Poplin, and Danos interviewed Ryan about his interaction with Evans, who verified the charges against her.

Moreover, an employee cannot survive summary judgment merely because she disagrees with the employer's assessment of her performance; the issue is whether the employer's perception of her performance, accurate or not, was the real reason for her termination.  *See Bryant*, 413 F.3d at 478; *Evans v. City of Houston*, 246 F.3d 344, 355 (5th Cir. 2001) (citing *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 408-09 (5th Cir. 1999)).  Thus, Evans's contention that she did not disclose confidential information or use her position at TxDOT improperly, even if true, does not necessarily demonstrate pretext.  "[T]he inquiry is limited to whether the employer believed the allegation[s] in good faith and whether the decision to discharge the employee was based on that belief."  *Waggoner*, 987 F.2d at 1165-66; *accord Johnson v. Louisiana*, 369 F.3d 826, 832 n.7 (5th Cir. 2004); *Ramirez v. Landry's Seafood Inn & Oyster Bar*, 280 F.3d 576, 579 n.4 (5th Cir. 2002); *Singh v. Shoney's, Inc.*, 64 F.3d 217, 219 (5th Cir. 1995).  Evans has adduced no viable evidence suggesting that Barton acted in bad faith when he relied on the investigation into Evans's conduct or that the decision to discharge her was motivated by anything

other than a reasonable belief that she had violated company policy.  "In sum, a dispute in the evidence concerning [Evans's] job performance does not provide a sufficient basis for a reasonable factfinder to infer that [TxDOT's] proffered justification is unworthy of credence." *Little*, 924 F.2d at 97.

"Nor does the statute require the employer to have good cause for its decisions.  The employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." *Nix*, 738 F.2d at 1187 (citing *Megill v. Board of Regents*, 541 F.2d 1073, 1077 (5th Cir. 1976)); *see also Bryant*, 413 F.3d at 478; *EEOC v. Texas Instruments, Inc.*, 100 F.3d 1173, 1182 (5th Cir. 1996); *Ray v. Tandem Computers, Inc.*, 63 F.3d 429, 435 n.19 (5th Cir. 1995); *Risher v. Aldridge*, 889 F.2d 592, 598 (5th Cir. 1989).  "'While an employer's judgment or course of action may seem poor or erroneous to outsiders, the relevant question is simply whether the given reason was a pretext for illegal discrimination.'" *Nix*, 738 F.2d at 1187 (quoting *Loeb*, 600 F.2d at 1012 n.6).  "Employment discrimination laws are 'not intended to be a vehicle for judicial second-guessing of business decisions, nor . . . to transform the courts into personnel managers.'" *Bryant*, 413 F.3d 478 (quoting *Bienkowski v. American Airlines, Inc.*, 851 F.2d 1503, 1507-08 (5th Cir. 1988)).

In the final analysis, Evans's subjective perception of age discrimination is all that remains. It is well established, however, that an employee's own subjective belief of discrimination, no matter how genuine, cannot serve as the basis for judicial relief.  *See Haley v. Alliance Compressor LLC*, 391 F.3d 644, 651 (5th Cir. 2004); *Roberson*, 373 F.3d at 654; *Tyler v. Union Oil Co.*, 304 F.3d 379, 395 (5th Cir. 2002); *Auguster v. Vermilion Parish Sch. Bd.*, 249 F.3d

400, 403 (5th Cir. 2001); *Bauer*, 169 F.3d at 967; *Price v. Marathon Cheese Corp.*, 119 F.3d

330, 337 (5th Cir. 1997); *Nichols*, 81 F.3d at 42.  Evans's "bald assertions of age discrimination

are inadequate to permit a finding that proscribed discrimination motivated" TxDOT's conduct.

*Ray*, 63 F.3d at 435.

Therefore, under the totality of the circumstances, Evans has failed to demonstrate that

TxDOT's articulated reasons for her termination are false, much less that they are a pretext for

age discrimination.  *See Crawford*, 234 F.3d at 904.  "'Evidence' that does not imply pretext

taken alone does not do so when cumulated." *Texas Instruments, Inc.*, 100 F.3d at 1186-87 (citing

*Holmberg v. Baxter Healthcare Corp.*, 901 F.2d 1387, 1391 (7th Cir. 1990)).  In this case, Evans

has not rebutted TxDOT's ample evidence of a legitimate, nondiscriminatory reason for her

termination.  Thus, Evans has "failed to meet [her] burden of producing any evidence of

discrimination sufficient to survive summary judgment, and [her] evidence to rebut the non-

discriminatory reasons offered by [TxDOT] is not so persuasive so as to support an inference that

the real reason was discrimination." *Rubinstein*, 218 F.3d at 400; *see Crawford*, 234 F.3d at 904.

As a consequence, Evans cannot prevail on her claim of age discrimination under the ADEA, and

summary judgment in favor of TxDOT is warranted.

5.    Discrimination under the ADA

Evans also asserts that her discharge was the result of discrimination based on her disability

of high blood pressure in violation of the ADA.  To recover under the ADA, a plaintiff must

prove that she was discriminated against on the basis of a disability.  *See Rodriguez*, 436 F.3d at

474; *Holtzclaw*, 255 F.3d at 258; *Giles v. General Elec. Co.*, 245 F.3d 474, 483 (5th Cir. 2001);

*McInnis v. Alamo Cmty. Coll. Dist.*, 207 F.3d 276, 282 (5th Cir. 2000); *Gonzales v. City of New*

*Braunfels*, 176 F.3d 834, 836 (5th Cir. 1999); *Talk v. Delta Airlines, Inc.*, 165 F.3d 1021, 1024

(5th Cir. 1999).  In the absence of direct evidence of discrimination, a plaintiff can establish a

*prima facie* case under the ADA by showing that:

> (1)    she has a "disability";
>
> (2)    she is qualified for the job;
>
> (3)    she was subject to an adverse employment action; and
>
> (4)    she was replaced by a non-disabled person or was treated less favorably
>        than non-disabled employees.

*See Gowesky*, 321 F.3d at 511; *Aldrup v. Caldera*, 274 F.3d 282, 286 (5th Cir. 2001); *McInnis*,

207 F.3d at 279-80; *Seaman*, 179 F.3d at 300.

The threshold requirement in any case brought under the ADA is a showing that the

plaintiff suffers from a disability protected under the Act.  *See Cutrera*, 429 F.3d at 111; *Dupre*,

242 F.3d at 613; *Hamilton v. Southwestern Bell Tel. Co.*, 136 F.3d 1047, 1050 (5th Cir. 1998);

*Sherrod v. American Airlines, Inc.*, 132 F.3d 1112, 1119 (5th Cir. 1998); *Rogers v. International*

*Marine Terminals, Inc.*, 87 F.3d 755, 758 (5th Cir. 1996).  "[W]hether a person has a disability

under the ADA is an individualized inquiry."  *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 483

(1999); *accord Kapche v. City of San Antonio*, 304 F.3d 493, 497 (5th Cir. 2002).  The ADA

defines a disability as:

> (A)    a physical or mental impairment that substantially limits one or more of the
>        major life activities of such individual;
>
> (B)    a record of such an impairment; or
>
> (C)    being regarded as having such an impairment.

42 U.S.C. § 12102(2); *accord Raytheon*, 540 U.S. at 49; *Williams*, 534 U.S. at 193; *Rodriguez*, 436 F.3d at 474; *Cutrera*, 429 F.3d at 111; *Blanks v. Southwestern Bell Commc'ns, Inc.*, 310 F.3d 398, 400 (5th Cir. 2002); *Aldrup*, 274 F.3d at 286; *Dupre*, 242 F.3d at 613; *McInnis*, 207 F.3d at 280.  The ADA further restricts the meaning of physical and mental impairment to:

> (1)    Any physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems:  neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine; or
>
> (2)    Any mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities.

29 C.F.R. § 1630.2(h)(1)-(2); *accord Deas*, 152 F.3d at 476 n.8; *Sherrod*, 132 F.3d at 1121 n.6; *Burch*, 119 F.3d at 315 n.5; *Dutcher v. Ingalls Shipbuilding*, 53 F.3d 723, 726 n.5 (5th Cir. 1995); *see Williams*, 534 U.S. at 194-95 (quoting 45 C.F.R. § 84.3(j)(2)(i) (2001)).  "Merely having an impairment does not make one disabled for purposes of the ADA." *Id.* at 195; *accord Nawrot v. CPC Int'l*, 277 F.3d 896, 903 (7th Cir. 2002) (noting that "not all plaintiffs with health conditions have a 'disability' within the meaning of the ADA").  "A physical impairment, standing alone, is not necessarily a disability as contemplated by the ADA.  The statute requires an impairment that substantially limits one or more of the major life activities." *Dutcher*, 53 F.3d at 726; *accord Williams*, 534 U.S. at 195; *Dupre*, 242 F.3d at 614; *Deas*, 152 F.3d at 479.

The ADA defines neither "substantially limits" nor "major life activities," but the EEOC's regulations under the ADA, which adopt the same definition of major life activities as used in the Rehabilitation Act, provide significant guidance. *Dupre*, 242 F.3d at 614; *Talk*, 165 F.3d at 1024; *Hamilton*, 136 F.3d at 1050; *Dutcher*, 53 F.3d at 726; *but see Williams*, 534 U.S. at 194 ("The persuasive authority of the EEOC regulations is less clear. . . .  [N]o agency has been given

authority to issue regulations interpreting the term 'disability' in the ADA."). "'Major life

activities means functions such as caring for oneself, performing manual tasks, walking, seeing,

hearing, speaking, breathing, learning, and working.'" *Talk*, 165 F.3d at 1024-25 (quoting 29

C.F.R. § 1630.2(i)); *accord Cutrera*, 429 F.3d at 111; *Mason*, 274 F.3d at 317; *Aldrup*, 274 F.3d

at 286; *Dupre*, 242 F.3d at 613 n.3; *McInnis*, 207 F.3d at 280. "'[T]he statutory language,

requiring a substantial limitation of a major life activity, emphasizes that the impairment must be

a significant one.'" *Deas*, 152 F.3d at 479 (quoting *Forrisi v. Bowen*, 794 F.2d 931, 933-34 (4th

Cir. 1986)). A "fundamental statutory requirement" is that "only impairments causing 'substantial

limitat[ions]' in individuals' ability to perform major life activities constitute disabilities."

*Albertson's, Inc.*, 527 U.S. at 565; *see Williams*, 534 U.S. at 195; *Waldrip v. General Elec. Co.*,

325 F.3d 652, 655 (5th Cir. 2003) (observing that "an impairment must not just limit or affect,

but must *substantially* limit a major life activity"(emphasis in original)).

The factors to be considered in determining whether an impairment substantially limits a

major activity include:

(1)  the nature and severity of the impairment;

(2)  its duration or expected duration; and

(3)  its permanent or expected permanent or long-term impact.

*Williams*, 534 U.S. at 196 (quoting 29 C.F.R. § 1630.2(j)(2)(i)-(iii)); *Dupre*, 242 F.3d at 614

(quoting *Dutcher*, 53 F.3d at 726); *Talk*, 165 F.3d at 1024; *see Deas*, 152 F.3d at 480.

"[T]emporary, non-chronic impairments of short duration, with little or no long term or permanent

impact, are usually not disabilities." 29 C.F.R. pt. 1630 app. § 1630.2(j); *accord Hamilton*, 136

F.3d at 1051; *Burch*, 119 F.3d at 316; *Rogers*, 87 F.3d at 759; *see Williams*, 534 U.S. at 198.

Furthermore, when determining whether an individual is substantially limited in a major life activity, corrective and mitigating measures, such as medication and assisting devices, must be taken into account.  *Sutton*, 527 U.S. at 482-83; *Cooper v. Olin Corp.*, 246 F.3d 1083, 1088 (8th Cir. 2001); *Cash v. Smith*, 231 F.3d 1301, 1305 n.4 (11th Cir. 2000); *Ivy v. Jones*, 192 F.3d 514, 516 (5th Cir. 1999); *EEOC v. R.J. Gallagher Co.*, 181 F.3d 645, 654 (5th Cir. 1999).  "A person whose physical or mental impairment is corrected by medication or other measures does not have an impairment that presently 'substantially limits' a major life activity."  *Sutton*, 527 U.S. at 482-83.

In the case at bar, Evans does not argue that she is disabled and presents no evidence that her high blood pressure substantially limits one or more of her major life activities, including her ability to work at TxDOT.  Rather, she contends that she meets the first prong of a *prima facie* case because TxDOT regarded her as having a disability.  Specifically, Evans notes that she was taken from work by ambulance on two occasions and contends that her transfer from the Beaumont office to the Kountze location was based on her alleged disability.  She also points out that her hostile work environment complaint states that she experienced high blood pressure during the incident with McCray, which required her to ask that the meeting conclude so that she could take her medication.  TxDOT responds that neither Barton nor Dinger regarded Evans as being disabled and that her transfer to the Kountze office was not, in fact, a medical transfer as Evans claims.

Under the ADA:

An individual is "regarded as" disabled when a covered entity mistakenly believes that:  (1) a person has a physical impairment that substantially limits one or more major life activities; or (2) an actual, non-limiting impairment substantially limits one or more major life activities.  In both situations, the covered entity must

entertain some misperception regarding the individual—either that he has a substantially limiting impairment that he does not have or the impairment is not so limiting as believed.

*Aldrup*, 274 F.3d at 287 (citing *Sutton*, 527 U.S. at 489); *accord Mason*, 274 F.3d at 317; *see Gowesky*, 321 F.3d at 508; *McInnis*, 207 F.3d at 281.  "Under the 'regarded as' prong, the disability status of the plaintiff turns not on the plaintiff's physical condition, but rather on how the plaintiff was perceived and treated by those alleged to have taken discriminatory action." *Deas*, 152 F.3d at 476 n.9; *see Mason*, 274 F.3d at 317; *Dupre*, 242 F.3d at 616 (citing *McInnis*, 207 F.3d at 281).

To make a *prima facie* showing of disability under this provision, a plaintiff must produce sufficient evidence for a reasonable trier of fact to conclude that the employer perceived her, however erroneously, as having an impairment that substantially limited one or more of her major life activities.  *See Blanks*, 310 F.3d at 402; *Dupre*, 242 F.3d at 616; *Deas*, 152 F.3d at 476; *Hamilton*, 136 F.3d at 1051; *Sherrod*, 132 F.3d at 1121.  "For an employer to regard an impairment as substantially limiting work, the employer must regard an individual as significantly restricted in his ability to perform a class or broad range of jobs." *Hamilton*, 136 F.3d at 1051-52 (citing *Burch*, 119 F.3d at 322; *Bridges v. City of Bossier*, 92 F.3d 329, 332 (5th Cir. 1996), *cert. denied*, 519 U.S. 1093 (1997)); *accord Blanks*, 310 F.3d at 402.  "'[A]n employer does not necessarily regard an employee as having a substantially limiting impairment simply because it believes she is incapable of performing a particular job.'" *Pryor v. Trane Co.*, 138 F.3d 1024, 1028 (5th Cir. 1998) (quoting *Ellison v. Software Spectrum, Inc.*, 85 F.3d 187, 192 (5th Cir. 1996)); *see Blanks*, 310 F.3d at 402; *Dupre*, 242 F.3d at 616 (citing *Deas*, 152 F.3d at 480).  "An employer's belief that an employee is unable to perform one task with an adequate safety margin

does not establish per se that the employer regards the employee as having a substantial limitation on his ability to work in general." *Foreman v. Babcock & Wilcox Co.*, 117 F.3d 800, 807 n.10 (5th Cir.), *cert. denied*, 522 U.S. 1115 (1998) (citing *Chandler v. City of Dallas*, 2 F.3d 1385, 1393 (5th Cir. 1993), *cert. denied*, 511 U.S. 1011 (1994)); *see Deas*, 152 F.3d at 481 n.22.

Here, Evans has failed to show that TxDOT regarded her as disabled.  As an initial matter, the court observes that the documentation regarding Evans's transfer to the Kountze Maintenance Office states only that she received a hardship transfer.  In her letter to then-District Engineer Crook, Evans requested the transfer because of the stress she felt subjected to at the Beaumont location.  In particular, it appears that Evans had recently been involved in a lawsuit and had undergone a difficult divorce from a man who continued to work at the Beaumont office.  She had also been transported to the hospital by ambulance on two occasions in 2002, while she worked at the Beaumont office.  Evans specifically attributed her high blood pressure and heart problems to a stressful work environment.  She explained in her letter that the Kountze office was more laid back and less stressful than the Beaumont office and, if transferred, she could "handle the day to day business with stride."  Finally, she noted that she had purchased a home near Kountze and that working in the Kountze office would enable her to help care for her grandchildren.

Even assuming that Evans's hardship transfer to the Kountze facility was related in part to her medical issues, there is no indication that TxDOT viewed her as disabled within the meaning of the ADA.  Rather, the evidence reveals only that Evans requested a transfer in part based on medical problems that she asserted were due to the stress of her work environment at the Beaumont office, which she believed would subside upon her transfer to the Kountze location.  Evans remained employed by TxDOT in the same capacity as office manager, and she continued

to perform all of her previous job responsibilities and duties following her transfer.  Indeed, TxDOT would not have transferred Evans if it believed that she was disabled and could not perform her responsibilities in Kountze.  Moreover, the fact that Dinger was aware that Evans took blood pressure medication does not suggest that he viewed her as disabled.  As the Supreme Court has commented, "[a] person whose physical or mental impairment is corrected by medication or other measures does not have an impairment that presently 'substantially limits' a major life activity."  *Sutton*, 527 U.S. at 482-83.

Furthermore, despite her previous medical difficulties at the Beaumont location, Evans has failed to show that TxDOT regarded her as disabled at the time of her discharge from the Kountze facility over a year later.  An ADA claimant must prove that she was regarded as disabled at the time of the alleged discriminatory act.  *See Cash*, 231 F.3d at 1306 n.5 (disability must be evaluated as manifested at the time of the challenged employment action); *McDaniel v. Mississippi Baptist Med. Ctr.*, 877 F. Supp. 321, 326-27 (S.D. Miss. 1994), *aff'd*, 74 F.3d 1238 (5th Cir. 1995) (plaintiff must be a "qualified individual with a disability" at the time the adverse action occurred); *see also Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 884 (6th Cir. 1996) (plaintiff must establish as part of *prima facie* case that she was a qualified individual with a disability at the time of the discriminatory act).  In this instance, Evans has patently failed to provide any evidence that TxDOT regarded her as disabled while she was employed at the Kountze office. Indeed, Evans's high blood pressure did not prevent her from performing her duties as office manager, and there is no evidence that Evans's supervisors limited her responsibilities in any respect.  Hence, the court finds that there is no support in the record for the contention that TxDOT regarded Evans as disabled at the time of her termination.

40

Because Evans has not shown that she suffers from an impairment that substantially limits a major life activity, has a record of such an impairment, or was treated as having a substantially limiting impairment, she has failed to establish the she has a disability within the purview of the ADA.  Accordingly, she is unable to present a *prima facie* case of disability discrimination, and summary judgment with respect to Evans's ADA claim is warranted.

C.    Retaliation Claim

In Evans's final claim, she asserts that TxDOT unlawfully retaliated against her for filing a hostile work environment complaint.  Title VII prohibits retaliation against an employee who has engaged in activity protected by the Act:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a).

The anti-retaliation provision has two components—an opposition clause and a participation clause.  *Douglas v. DynMcDermott Petroleum Operations Co.*, 144 F.3d 364, 372 (5th Cir. 1998), *cert. denied*, 525 U.S. 1068 (1999); *Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1185 (11th Cir. 1997).  "The opposition clause of § 2000e-3(a) requires the employee to demonstrate that she had at least a 'reasonable belief' that the practices she opposed were unlawful."  *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996) (quoting *Payne v. McLemore's Wholesale & Retail Stores*, 654 F.2d 1130, 1140 (5th Cir. 1981), *cert. denied*, 455 U.S. 1000 (1982)); *see Freitag v. Ayers*, 468 F.3d 528, 541 (9th Cir. 2006), *cert. denied*, 127 S. Ct. 1918 (2007); *Fine v. Ryan Int'l Airlines*, 305 F.3d 746, 752 (7th Cir. 2002); *Little v. Windermere Relocation, Inc.*, 301 F.3d 958,

969 (9th Cir. 2002).  Because the participation clause does not explicitly include the "reasonable belief" requirement, some appellate courts have held that this clause provides broad, unrestricted protection to an employee who has participated in a Title VII proceeding.  *See Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1312 (6th Cir. 1989); *see also Hashimoto v. Dalton*, 118 F.3d 671, 680 (9th Cir. 1997), *cert. denied*, 523 U.S. 1122 (1998).  Citing a 2001 Supreme Court opinion, however, the Third Circuit recently held that "[w]hether the employee opposes, or participates in a proceeding against, the employer's activity, the employee must hold an objectively reasonable belief, in good faith, that the activity they oppose is unlawful under Title VII." *Moore v. City of Philadelphia*, 461 F.3d 331, 341 (3d Cir. 2006) (citing *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 271 (2001)).  The court was unable to locate any relevant Fifth Circuit authority on this specific issue.  Nonetheless, regardless of the clause under which an employee proceeds, she must demonstrate that her opposition to perceived unlawful conduct or participation in protected activity was a motivating or determining factor in the adverse employment action taken by her employer, *i.e.*, there must be a causal connection.  *See Baker*, 430 F.3d at 754; *Evans*, 246 F.3d at 353-54; *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 684-85 (5th Cir. 2001).

The Fifth Circuit has held that "the familiar *McDonnell Douglas* burden-shifting framework applies in Title VII retaliation cases." *Mato v. Baldauf*, 267 F.3d 444, 452 (5th Cir. 2001), *cert. denied*, 536 U.S. 922 (2002) (citing *Rios v. Rossotti*, 252 F.3d 375, 380 (5th Cir. 2001); *Rubinstein*, 218 F.3d at 401-02); *accord Strong v. University Healthcare Sys., L.L.C.*, 482 F.3d 802, 805 (5th Cir. 2007); *Turner*, 476 F.3d at 348; *Septimus*, 399 F.3d at 607-08; *Aldrup*, 274 F.3d at 286.  "The framework for analyzing a retaliation claim is the same as that used in the

employment discrimination context." *Rios*, 252 F.3d at 380; *accord Medina*, 238 F.3d at 684.

Therefore, after the plaintiff establishes a *prima facie* case of retaliation, the burden shifts to the

defendant to proffer a legitimate, nonretaliatory reason for its actions.  *Strong*, 482 F.3d at 805;

*Baker*, 430 F.3d at 754-55; *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002); *Aldrup*, 274 F.3d

at 286; *Rios*, 252 F.3d at 380; *Medina*, 238 F.3d at 684.

If the employer meets its burden, the employee may nevertheless prevail by showing that

the reasons given by the employer are a pretext for retaliation.  *Strong*, 482 F.3d at 806; *Septimus*,

399 F.3d at 608; *Gee*, 289 F.3d at 345; *Aldrup*, 274 F.3d at 286; *Rios*, 252 F.3d at 380; *Medina*,

238 F.3d at 684.   Under a pretext theory, to carry her ultimate burden, the plaintiff must

demonstrate that the adverse employment action would not have occurred "but for" the employee's

participation in the protected activity.  *See Strong*, 482 F.3d at 806; *Septimus*, 399 F.3d at 608;

*Mato*, 267 F.3d at 450; *Rios*, 252 F.3d at 380; *Evans*, 246 F.3d at 354.

To establish a *prima facie* case of retaliation, a plaintiff must show:

(1)     she engaged in statutorily protected activity under Title VII;

(2)     action was taken by the employer against the plaintiff that a reasonable
         employee would consider materially adverse; and

(3)     a causal connection exists between the protected activity and the adverse
         action.

*See McCoy*, 492 F.3d at 556-57; *Lemaire v. Louisiana Dep't of Transp. & Dev.*, 480 F.3d 383,

388 (5th Cir. 2007); *Turner*, 476 F.3d at 348; *see Burlington N. & Santa Fe Ry. Co. v. White*, ___

U.S. ___, ___, 126 S. Ct. 2405, 2415-16 (2006); *Strong*, 482 F.3d at 806.

Here, the parties do not dispute that Evans has established the first two elements of a *prima*

*facie* case, namely, that she engaged in a protected activity by filing a complaint of hostile work

environment and that her termination from TxDOT was a materially adverse action.  Contrary to the parties' positions, however, the court finds that Plaintiff has not shown that she engaged in a statutorily protected activity.  Specifically, although Evans complained of a purportedly hostile work environment, at no time did she suggest that McCray's conduct was related to Evans's race, sex, age, disability, or other characteristic protected by Title VII.  *See, e.g.*, *Harris-Childs v. Medco Health Solutions, Inc.*, 169 F. App'x  913, 916 (5th Cir. 2006) (finding no protected activity where plaintiff's complaints to her employer did not allege that she was treated unfairly due to her race or gender); *Moore v. United Parcel Serv., Inc.*, 150 F. App'x 315, 319 (5th Cir. 2005) (finding that plaintiff's grievance was not a protected activity because it did not protest racial discrimination or any other unlawful employment practice under Title VII).  While Evans may have found McCray's behavior rude or offensive, there is no indication that it implicated Title VII.  *See Burlington N. & Santa Fe Ry. Co.*, 126 S. Ct. at 2415 (stating that Title VII "does not set forth 'a general civility code for the American workplace'" (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998) (explaining that "Title VII does not prohibit all verbal or physical harassment in the workplace" but is directed only at discrimination))); *Webb v. Cardiothoracic Surgery Assocs. of N. Tex., P.A.*, 139 F.3d 532, 539 (5th Cir. 1998) (commenting that not every insult, slight, or unpleasantness gives rise to a valid Title VII claim), *overruled on other grounds by Burlington N. & Santa Fe Ry. Co.*, 126 S. Ct. at 2414.  In the absence of statutorily protected activity, there can be no cognizable retaliation claim under Title VII.

Even assuming *arguendo* that Evans engaged in statutorily protected activity under Title VII, she nevertheless fails to show a causal connection between the complaint and her termination.

Although the causation element of a *prima facie* case is similar to the ultimate issue in an unlawful retaliation claim, the standard for establishing a causal link at the *prima facie* case stage is much less stringent.  *See Ackel v. National Commc'ns, Inc.*, 339 F.3d 376, 385 (5th Cir. 2003); *Gee*, 289 F.3d at 345; *Evans*, 246 F.3d at 354; *Long*, 88 F.3d at 305 n.4.  As the Fifth Circuit has commented:

> At first glance, the ultimate issue in an unlawful retaliation case—whether the defendant discriminated against the plaintiff *because* the plaintiff engaged in conduct protected by Title VII—seems identical to the third element of the plaintiff's prima facie case—whether a *causal* link exists between the adverse employment action and the protected activity.  However, the standards of proof applicable to these questions differ significantly.

*Id.* (emphasis in original).

In order to establish the requisite causal link, a plaintiff need not prove that her protected activity was the sole factor in motivating the employer's challenged decision.  *Gee*, 289 F.3d at 345; *Evans*, 246 F.3d at 354; *Rubinstein*, 218 F.3d at 403; *Long*, 88 F.3d at 305 n.4.  Rather, a causal link is established when the evidence demonstrates that the employer's decision to take adverse action was based in part on knowledge of the employee's protected activity.  *See Ackel*, 339 F.3d 385-86 (citing *Medina*, 238 F.3d at 684); *Sherrod*, 132 F.3d at 1122.  To satisfy the causation prong, "a plaintiff must show that the decisionmaker who committed the adverse employment action was aware of the plaintiff's protected activity."  *Perches v. Elcom, Inc.*, ___ F. Supp. 2d ___, ___, No. EP-04-CA-0228, 2007 WL 2341249, at *8 (W.D. Tex. Aug. 16, 2007); *accord Taylor v. United Parcel Serv., Inc.*, 421 F. Supp. 2d 946, 954 (W.D. La. 2006) (citing *Manning v. Chevron Chem. Co.*, 332 F.3d 874, 883 (5th Cir. 2003), *cert. denied*, 540 U.S. 1107 (2004)); *see also Ackel*, 339 F.3d at 385-86; *Medina*, 238 F.3d at 684.  "If an employer is unaware of an employee's protected conduct at the time of the adverse employment action, the

employer plainly could not have retaliated against the employee based on that conduct." *Chaney v. New Orleans Pub. Facility Mgmt., Inc.*, 179 F.3d 164, 168 (5th Cir. 1999); *accord Ackel*, 339 F.3d at 385-86; *Manning*, 332 F.3d at 883; *Taylor*, 421 F. Supp. 2d at 954.

In the case at bar, TxDOT provided the sworn affidavit of Barton, the final decision maker, who stated that he had not seen Evans's complaint of hostile work environment and had no knowledge of such a complaint when he terminated Evans on June 18, 2004.  Barton further explained that he did not begin his job at the Beaumont District until December 2003, two months after Evans filed her complaint.  In response, Evans offers no evidence that Barton knew of her complaint, arguing instead that Barton's knowledge is irrelevant because he served as the "cat's paw" of another person acting with a retaliatory motive, namely, McCray.

When the titular decision maker "serves as the 'cat's paw' of those who were acting from retaliatory motives, the causal link between the protected activity and adverse employment action remains intact." *Gee*, 289 F.3d at 346 (citing *Long*, 88 F.3d at 307); *see Roberson*, 373 F.3d at 653; *Russell*, 235 F.3d at 227; *Acker v. Deboer, Inc.*, 429 F. Supp. 2d 828, 847 (N.D. Tex. 2006).  To invoke the cat's paw analysis, a plaintiff must establish two conditions:  (1) that a co-worker exhibited retaliatory animus and (2) that the same co-worker "'possessed leverage, or exerted influence, over the titular decisionmaker.'" *Roberson*, 373 F.3d at 653 (quoting *Russell*, 235 F.3d at 227); *accord Bisong v. University of Houston*, 493 F. Supp. 2d 896, 914 (S.D. Tex. 2007); *Gillespie v. City of Macon*, 485 F. Supp. 2d 722, 728 (S.D. Miss. 2007); *see also Laxton*, 333 F.3d at 584; *Gee*, 289 F.3d at 346.  When the above elements have been satisfied, it is proper to impute the retaliatory motive to the formal decision maker. *Bryant*, 413 F.3d at 477; *Roberson*,

46

373 F.3d at 653; *Russell*, 235 F.3d at 226; *see Gee*, 289 F.3d at 346 n.2; *Laxton*, 333 F.3d at 584.

With respect to the influence requirement, if the decision maker conducted an independent investigation rather than "rubber stamping" or relying on the recommendation of the person with retaliatory animus, any causal link between the alleged retaliatory intent and the adverse employment action is severed. *Mato*, 267 F.3d at 450; *Long*, 88 F.3d at 307; *Gillespie*, 485 F. Supp. 2d at 728; *see Gee*, 289 F.3d at 346; *Sherrod*, 132 F.3d at 1122. In contrast, if the ultimate decision maker "was influenced by others who had retaliatory motives, then his investigation cannot in any real sense be considered independent." *Gee*, 289 F.3d at 346 n.2 (emphasis omitted).

Here, Evans argues that McCray exhibited retaliatory animus toward her due to Evans's filing a complaint of hostile work environment against McCray in October 2003. As a result of this complaint, McCray received an oral reprimand from her supervisor. At deposition, McCray stated that she was not upset or angry with Evans after the complaint was filed and that she felt an oral reprimand was a fair punishment for the incident. She noted, however, that she did not agree with the complaint, as she did not believe that she had displayed hostility toward Evans. McCray claimed that after she was reprimanded, she kept her distance from Evans to avoid future conflicts, but she remained polite to Evans. No additional information regarding McCray's alleged retaliatory animus has been submitted to the court, and TxDOT does not appear to dispute that McCray may have harbored a retaliatory animus when reporting Evans to the audit team.

Viewing the above evidence in a light most favorable to Evans, the court finds that she has satisfied the first element of the cat's paw analysis. Because McCray was reprimanded as a result

47

of Evans's complaint—a complaint which McCray believed to be unfounded—there is sufficient evidence in the record for a reasonable juror to infer that McCray may have acted with a retaliatory motive toward Evans.

Nevertheless, Plaintiff's cat's paw theory fails with respect to the second element, which requires a showing that McCray possessed leverage or exerted influence over Barton in his decision to terminate Evans.   Evans argues that McCray exerted influence over Barton by reporting Evans's alleged actions to the audit team, thereby initiating an investigation into her conduct.   In response, TxDOT contends that Evans has failed to show that McCray exerted influence or possessed leverage over Barton.   TxDOT points out that there is no evidence that McCray spoke to Barton about Evans or otherwise contacted or corresponded with him on the subject, much less that she recommended or urged Barton to terminate Evans.

While it was McCray's complaint to the audit team that triggered the investigation into Evans's conduct, the court finds no evidence that McCray exerted influence over Barton's final decision to terminate Evans.   The record in this case shows that Barton conducted an independent investigation into the allegations against Evans.   Upon completion of the audit team's initial investigation of the complaint and report to Barton that it believed the allegations were substantiated, Barton asked Human Resources and Internal Affairs to investigate the matter further.   Despite Evans's denial of the allegations, Walters corroborated the statements of McCray, reporting that Evans repeatedly urged him to change his beneficiary and that her actions caused him to inquire about his beneficiary information with Human Resources to verify that it had not been changed without his permission.

48

Moreover, Evans's alleged conduct regarding Walters's beneficiary was not the sole reason for her termination from TxDOT.  Reports that Evans improperly contacted N-Line about her daughter's wages were entirely unrelated to McCray.  Barton again investigated the allegations, which were confirmed separately by Poplin and Ryan, the N-Line Human Resources Manager who recalled the conversation with Evans.  Finally, the record shows that McCray was a rank-and-file, non-supervisory employee who had little direct contact with Barton.  She made no recommendations to Barton that Evans should be disciplined or terminated but merely reported behavior she found questionable to the audit team.

In view of the absence of contact between Barton and McCray regarding Evans, the corroboration of McCray's contentions by other employees, and the substantiated allegations against Evans which were unrelated to McCray, the court concludes that no reasonable juror could find that McCray exerted influence or possessed leverage over Barton with respect to Barton's decision to discharge Evans.  It is clear that Barton conducted an independent investigation into Evans's conduct and reached the decision to terminate her based on the findings of the audit team, Human Resources, and Internal Affairs.  He did not merely "rubber stamp" or rely on any recommendation of McCray to discharge Evans.  Thus, any causal link between McCray's possible retaliatory intent and Barton's decision to discharge Evans was severed by the various independent investigations into the allegations.

In sum, Evans's failure to adduce evidence that Barton knew of her hostile work environment complaint negates the existence of a causal link between her protected activity and TxDOT's decision to terminate her employment.  *See Ackel*, 339 F.3d at 385-86 (citing *Medina*, 238 F.3d at 684).  Furthermore, Evans is unable to impute any retaliatory animus by McCray to

49

Barton based on the cat's paw theory, as there is no evidence that McCray influenced Barton's decision to terminate Evans.  Because she is unable to establish a *prima facie* case, Evans cannot prevail on her Title VII retaliation claim.  She has not made the necessary showing to give rise to an inference that TxDOT retaliated against her for filing a complaint of hostile work environment. Evans has also adduced no evidence that "but for" her complaint, she would have remained an employee of TxDOT.  *See Strong*, 482 F.3d at 806; *Septimus*, 399 F.3d at 608; *Gee*, 289 F.3d at 345; *Aldrup*, 274 F.3d at 286; *Rios*, 252 F.3d at 380.  Therefore, summary judgment is proper with respect to Evans's retaliation claim.

III.    Conclusion

Summary judgment is warranted on all of Plaintiff's claims against TxDOT.  Evans has failed to establish a *prima facie* case of racial or sexual discrimination under Title VII, discrimination based on disability pursuant to the ADA, or retaliatory discharge under Title VII. She also has no cognizable claim for age discrimination in violation of the ADEA.  There remain no material facts in dispute, and Defendant is entitled to judgment as a matter of law.

SIGNED at Beaumont, Texas, this 1st day of October, 2007.

_Marcia A. Crone_

MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE

50